

FILED
02/15/2024
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 3, 2024

## TORIUS SAVILLE RUSSELL v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Dyer County**
**No. 17-CR-50, 17-CR-51   Tony Childress, Chancellor**

_____

### No. W2023-00907-CCA-R3-PC
_____

The petitioner, Torius Saville Russell, appeals the denial of his petition for post-conviction relief, arguing the post-conviction court erred in finding he received the effective assistance of counsel at trial.  Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN W. CAMPBELL, SR., and MATTHEW J. WILSON, JJ., joined.

Hal J. Boyd, Tiptonville, Tennessee, for the appellant, Torius Saville Russell.

Jonathan Skrmetti, Attorney General and Reporter; G. Kirby May, Assistant Attorney General; Danny Goodman, Jr., District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

The petitioner was convicted of one count of second-degree murder, eight counts of aggravated assault, and one count of reckless endangerment, for which he received a total effective sentence of fifty years' incarceration. *State v. Russell*, No. W2020-01323-CCA-R3-CD, 2021 WL 5184070, at *1 (Tenn. Crim. App. Nov. 9, 2021), *perm. app. denied* (Tenn. Mar. 24, 2022).  This Court affirmed the petitioner's convictions and sentences on direct appeal, and the Tennessee Supreme Court denied the petitioner's application for permission to appeal.  *Id.*

The petitioner's convictions stem from a shooting at a child's birthday party in November 2016. *Id.* There had been an on-going feud between the petitioner and one of the victims, and several witnesses identified the petitioner as the shooter. *Id.* Earlier the day of the party, the petitioner and another man arrived at the victims' house and started a confrontation. *Id.* The petitioner was armed with a pistol, and his actions prompted a call to law enforcement. *Id.*

Around 6:00 p.m. that night, shortly after the birthday party began, a man wearing a black hooded sweatshirt approached the party and began shooting into the crowd of people. *Id.* at *2. Two children and seven adults were shot; one victim did not survive. *Id.* At the trial, multiple eyewitnesses identified the petitioner as the shooter, and the witnesses were questioned about their ability to identify the petitioner due to the lighting conditions. *Id.* at *2-3. The witnesses acknowledged that it was dark outside but explained that a streetlight allowed them to nonetheless identify the petitioner. *Id.* at *2-3, *5. In addition, a jailhouse informant testified that the petitioner admitted to being the shooter. *Id.* at *3. Defense counsel called three witnesses – one as an alibi, one as an eyewitness who described the lighting and could not identify the shooter, and a police officer who described the lighting conditions and distance of the witnesses from the shooter. *Id.* at *4.

On June 16, 2022, the petitioner filed a pro se petition for post-conviction relief, arguing that trial counsel was ineffective for failing to interview the eyewitnesses prior to trial, failing to engage in meaningful plea negotiations, and failing to retain a lighting expert to testify whether the eyewitnesses could have identified the petitioner as the shooter under the lighting conditions at the time.[1] The post-conviction court conducted an evidentiary hearing on May 2, 2023, at which trial counsel and the petitioner testified.

Trial counsel, an attorney with twenty-eight years' experience and who has handled more than eighty criminal and civil trials, testified that he was appointed to represent the petitioner after the public defender's office discovered a conflict. Counsel represented the petitioner for approximately a year before the case went to trial. Upon his appointment, counsel reviewed the discovery, the investigation conducted by the public defender's office, all the previously filed motions, and conducted his own investigation. Counsel spent about 280 hours working on the case, not including any post-trial motions. Counsel met with the petitioner, by his notes, eleven times in preparation of trial.

Counsel learned that the public defender's office had hired an investigative firm, Blackwatch Investigations, and counsel met with the Blackwatch investigators to review their findings. Blackwatch investigators had interviewed several witnesses, including

---

[1] Appointed counsel reviewed the pro se petition and determined that an amended petition need not be filed.

many who ended up testifying for the State. Counsel felt that the information provided by Blackwatch was helpful to his trial preparation and development of a strategy.

With regard to one of the witnesses, a jailhouse informant, counsel developed a strategy to deal with the informant's testimony by impeaching his motive to testify, i.e., to show that he received favorable treatment from the State in exchange for his testimony. With regard to the eyewitnesses, counsel developed the overarching trial strategy to impeach based on bias or prior inconsistent statements, as well as challenge their ability to perceive the incident due to lighting conditions and their locations at the time of the shooting. Counsel elected to call the petitioner's mother's long-time companion as an alibi witness after reviewing the alibi witness's statement to Blackwatch investigators and also personally interviewing the witness. Counsel was aware of issues with the alibi witness's testimony concerning the timing of the incident but determined the witness's testimony was vital.

Plea negotiations started when the petitioner was represented by the public defender's office, and counsel discussed plea negotiations with the petitioner during the course of his representation. A couple days before trial, counsel received what he considered "a fairly good offer" from the State of twenty-five years for a plea to second-degree murder. Counsel immediately discussed the offer with the petitioner, and the petitioner wanted counsel to see if the State would dismiss a separate, unrelated felony gun charge. When the State would not agree to dismiss the gun charge, the petitioner refused the offer and proceeded to trial. Counsel recalled that there had been other discussions with the State as the case unfolded, "but the meaningful plea discussions came at the . . . end right before trial."

Trial counsel discussed his process of analyzing the evidence to determine whether an expert would be helpful or beneficial and how that analysis resulted in his decision to not seek out a lighting expert. Counsel looked up twilight data from the National Weather Service for the date of the incident and visited the crime scene a number of times to determine the lighting conditions. Counsel's trial strategy was to impeach the State's witnesses as to their versions of the lighting conditions and was also able to call an eyewitness who disputed the lighting conditions as testified to by the State's witnesses. Counsel determined that "people's common experience would be a better guide" than that of an expert witness in disputing a witness's ability to see. Counsel elaborated that, in his opinion, "the more powerful testimony in that particular case [wa]s provided by people's common experience, cause everybody who can see walks out every day and looks at the light conditions." In counsel's opinion, "you've got to be careful not to . . . call an expert witness for something that people's common experience is perfectly reasonable to explain." Counsel summarized that he "thought the best way to attack it was to . . . collate

a bunch of inconsistent testimony from all these different witnesses about what they could see, and then appeal to people's common knowledge about lighting conditions."

Counsel believed that he provided the petitioner with "excellent defense" representation and that the defendant received an "excellent result" given the two most serious charges against the petitioner were dismissed.

The petitioner testified that counsel only met with him five times or less and never visited him to discuss the investigation or trial strategy. The petitioner said that he disagreed with the trial strategy implemented by counsel, as well as counsel's decision not to hire a lighting expert. Asked whether counsel was lying when he testified about the investigation he conducted in the case or whether Blackwatch had been hired to investigate, the petitioner attempted to "plead the fifth." The petitioner also attempted to "plead[] the fifth" when asked whether counsel cross-examined the State's witnesses with the inconsistencies in their prior statements.

The petitioner claimed that he and counsel did not discuss plea negotiations, specifically denying that counsel conveyed to him an offer of twenty-five years. The petitioner said that minutes before the trial was to begin, counsel conveyed an offer of twelve years at sixty percent for reckless homicide and twelve years at sixty percent for an unrelated gun charge for a total sentence of twenty-four years. The petitioner refused to plead to the gun charge and asked counsel to counter with an offer to only plead to reckless homicide for twelve years at sixty percent. Counsel told the petitioner that the State would not accept such an offer, so the petitioner said, "[W]ell I'm innocent anyway, so I'm not takin' nothin'."

At the conclusion of the hearing, the post-conviction court made extensive oral findings as to each of the petitioner's allegations, as well as subsequently issued a written order, denying the petition. The petitioner filed a timely appeal.

*Analysis*

On appeal, the petitioner argues he received ineffective assistance of counsel because counsel failed to: (1) engage in meaningful plea negotiations and (2) retain a lighting expert to impeach the State's witnesses at trial.[2] The State responds that the post-conviction court properly denied relief because the petitioner failed to prove he received ineffective assistance. We agree with the State.

_____

[2] The petitioner also challenged counsel's pretrial investigation in his petition. However, in the petitioner's brief, post-conviction counsel noted that he "finds no merit to this alleged deficiency and will not continue forward with an appeal on this basis."

- 4 -

The petitioner bears the burden of proving his post-conviction factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). The findings of fact established at a post-conviction evidentiary hearing are conclusive on appeal unless the evidence preponderates against them. *Tidwell v. State*, 922 S.W.2d 497, 500 (Tenn. 1996). This Court will not reweigh or reevaluate evidence of purely factual issues. *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, appellate review of a trial court's application of the law to the facts is *de novo*, with no presumption of correctness. *See Ruff v. State*, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel presents mixed questions of fact and law. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Thus, this Court reviews the petitioner's post-conviction allegations *de novo*, affording a presumption of correctness only to the post-conviction court's findings of fact. *Id*.; *Burns v. State*, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceedings. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the standard for determining ineffective assistance of counsel applied in federal cases is also applied in Tennessee). The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. In order for a post-conviction petitioner to succeed, both prongs of the *Strickland* test must be satisfied. *Id*. Thus, courts are not required to even "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*.; *see also Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (stating that "a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

A petitioner proves a deficiency by showing "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (first citing *Strickland*, 466 U.S. at 688; and then citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the *Strickland* test is satisfied when the petitioner shows there is a reasonable probability,

or "a probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. However, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

## I. Plea Negotiations

The petitioner argues that he received ineffective assistance of counsel because counsel failed to engage in meaningful plea negotiations.

To determine whether a petitioner is entitled to relief for ineffective assistance of counsel during plea negotiations, the petitioner has the burden of showing by a reasonable probability that, but for counsel's deficient representation, (1) the petitioner would have accepted the plea, (2) the prosecution would not have withdrawn the offer, and (3) the trial court would have accepted the terms of the offer, such that the penalty under its terms would have been less severe than the penalty actually imposed. *Nesbit v. State*, 452 S.W.3d 779, 800-01 (Tenn. 2014).

At the evidentiary hearing, counsel testified that he discussed plea negotiations with the petitioner during the course of his representation. Counsel said that although there were discussions with the State as the case unfolded, "the meaningful plea discussions came at the . . . end right before trial." A couple days before trial, counsel received what he considered "a fairly good offer" from the State of twenty-five years for a plea to second-degree murder. However, the petitioner declined the offer after the State did not agree to the petitioner's counter of also dismissing a separate, unrelated felony gun charge.

Contrary to counsel's testimony, the petitioner claimed that he and counsel did not discuss plea negotiations and specifically denied that counsel conveyed to him an offer of twenty-five years. The petitioner recalled receiving an offer minutes before the trial was to begin, but the petitioner did not want to accept the offer as-is and counsel told him that the State would not accept the petitioner's proposed modification. According to the petitioner, he told counsel, "[W]ell I'm innocent anyway, so I'm not takin' nothin'."

In ruling on this issue, the post-conviction court specifically found the petitioner's testimony was not credible. As such, the petitioner has failed to establish his factual allegations by clear and convincing evidence and, therefore, failed to prove that counsel rendered ineffective assistance. Rather, the record shows that counsel engaged in plea

negotiations with the State and that the petitioner voluntarily rejected the State's offer. The petitioner is not entitled to relief.

## II.  Lighting Expert

The petitioner argues that he received ineffective assistance of counsel because counsel failed to retain a lighting expert to impeach the State's witnesses at trial. The petitioner asserts that an expert could "explore the lighting conditions . . . [and] could potentially recreate a visual picture of [the petitioner]." The State submits the petitioner, by failing to call an expert at the post-conviction hearing, failed to meet his burden of proof. We agree with the State.

Even if we presume counsel was deficient for failing to engage the services of a lighting expert, the petitioner failed to present a lighting expert at the post-conviction hearing to establish what favorable information such an expert would have provided. "To succeed on a claim of ineffective assistance of counsel for failure to call a witness at trial, a post-conviction petitioner should present that witness at the post-conviction hearing." *Pylant v. State*, 263 S.W.3d 854, 869 (Tenn. 2008) (citing *Black v. State*, 794 S.W.2d at 757). "As a general rule, this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner." *Id.* Because the petitioner failed to call a lighting expert at the post-conviction hearing, he cannot meet his burden and is not entitled to relief.

### *Conclusion*

Based on the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____
J. ROSS DYER, JUDGE

- 7 -